UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **VIA VADIS, LLC** and<br>**AC TECHNOLOGIES, S.A.,**<br>    *Plaintiffs*<br><br>v.<br><br>**BLIZZARD ENTERTAINMENT, INC.,**<br>    *Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§      **CIVIL NO. 1:14-CV-00810-LY** |

**O R D E R**

Before the Court are Plaintiffs' Motion to Compel Answers to Interrogatories and Production of Documents, filed April 16, 2021 (Dkt. 130); Blizzard's Opposition to Plaintiffs' Motion to Compel Answers to Interrogatories and Production of Documents, filed April 26, 2021 (Dkt. 135); Plaintiffs' Reply, filed May 3, 2021 (Dkt. 139); Blizzard's Sur-Reply, filed May 12, 2021 by leave of Court (Dkt. 145-1; Dkt. 158); and Plaintiffs' Advisory Notice to the Court Re: Plaintiffs' Motion to Compel Answers to Interrogatories and Production of Documents, filed July 2, 2021 (Dkt. 170). The District Court referred Plaintiffs' motion to the undersigned Magistrate Judge for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 159. The Court held a hearing on the motion on July 7, 2021.

**I. Background**

Via Vadis and AC Technologies, S.A. ("Plaintiffs") are the owner and exclusive licensee, respectively, of U.S. Patent No. RE40,521 (the "Asserted Patent") for a data access and management system. They accuse Defendant Blizzard Entertainment, Inc. ("Blizzard") of making

1

video game distribution software that infringes the Asserted Patent. Amended Complaint, Dkt. 116.

The patent claims asserted by Plaintiffs cover the operations of peer-to-peer networks. Plaintiffs allege that Blizzard infringes the asserted claims by using the BitTorrent Protocol, a "peer to peer file distribution protocol that allows multiple networked users to simultaneously upload and download segments or pieces of the same file to and from each other." Dkt. 116 ¶ 14. Plaintiffs contend that Blizzard used BitTorrent to distribute certain of its video games, known as "Titles," including the World of Warcraft, StarCraft, and Diablo series. Dkt. 130 at 4-5.

Plaintiffs now ask the Court to compel Blizzard to answer certain interrogatories and produce documents responsive to their discovery requests.

## II.  Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (quoting *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 820 (5th Cir. 2004)). When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A).

After a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure or discovery. FED. R. CIV. P. 37(a)(1). The party resisting discovery must show how each discovery request is not relevant or otherwise objectionable. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). "The Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice or burden to the other party." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003). "A trial court enjoys wide discretion in determining the scope and effect of discovery." *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982).

### III.  Analysis

Plaintiffs contend that this discovery dispute centers on "Plaintiffs' request for information and documents relating to 'Title data,'" defined as follows:

> As used herein, "Title" refers to a Blizzard video game title that Blizzard distributed in whole or in part using BitTorrent or Peer-to-Peer technology, as those terms are defined in Ex. A, Plaintiffs First Set of Interrogatories to Blizzard, at 4-5, Plaintiffs' First Set of Requests for Production. "Title data" is the data associated with each title including the game files or data, updates, patches, and hotfixes.

Dkt. 130 at 2 & n.1. Plaintiffs seek information and documents in four categories spanning several discovery requests, and also contend that Blizzard's production is insufficient as to certain individual requests. In addition, Plaintiffs raise issues related to privilege and alleged spoliation.

Blizzard responds that it has produced the source code for its accused peer-to-peer distribution systems, as well as responsive documents for the majority of the categories of information Plaintiffs seek, with the exception of financial information regarding its video games. Blizzard contends that Plaintiffs' request for financial information should be denied "because Plaintiffs

have not identified any theory under which such information is relevant or that Plaintiffs would be permitted to present such information to the jury." Dkt. 135 at 4. Blizzard argues that its games are not accused of infringement and not functionally linked to the file distribution system. *Id.* at 5.

The Court addresses in turn the issues raised in Plaintiffs' motion to compel.

**A. Backup Tapes**

This lawsuit was filed on August 22, 2014. The accused peer-to-peer functionality of Blizzard's game distribution system was implemented at least eight years earlier, in 2006. Dkt. 135 at 4, 6. All use ceased in July 2016; Blizzard now distributes its games entirely by content delivery networks ("CDNs") rather than peer-to-peer. *Id.*

Plaintiffs argue that Blizzard "has been in litigation regarding BitTorrent" since August 2014 in this case and May 2013 in another case, *Parallel Networks v. Blizzard*, 1:13-cv-00826 (D. Del. 2013). Nonetheless, Plaintiffs contend, Blizzard "allowed its computer systems to destroy relevant information on data distribution" and "appears to have destroyed such files between August 2014 and July 2016." Dkt. 139 at 3. Blizzard responds that:

> the vast majority of the data that Plaintiffs seek—server logs generated from 2004 to the filing of this lawsuit in August 2014— were deleted *before this litigation was filed* as part of Blizzard's normal data log retention policy. Because the vast majority of the data Plaintiffs seek was overwritten prior to the institution of this lawsuit, Blizzard was under no obligation to preserve it and cannot be faulted that the pre-lawsuit data is not available

Dkt. 145-1 at 3. Blizzards admits, however, that it

> does possess some backup tapes that contain some raw server log data, and those logs might contain some raw information of snapshots regarding the amount of data downloaded from CDNs and shared via peer-to-peer, but processing that data would be extremely burdensome and expensive, without any certainty that the data sought exists in those logs.

4

Dkt. 135 at 7 n.2. Plaintiffs ask the Court to compel Blizzard to search the backup tapes, arguing that Blizzard "must be compelled to give everything it has in its possession, make every effort to restore lost files, and failing that, be found to have spoliated critical evidence during the pendency of this lawsuit." Dkt 139 at 3-4.

In a sealed declaration (the "Yaney Dec."), John Yaney, Blizzard's Director of Engineering, describes the steps that would be necessary to pull the data[1] from the tapes, estimating that the process "could take between 100-500 man-hours without any certainty that the logs contain the information sought." Dkt. 136-1 ¶¶ 7-8. Blizzard also points out that it produced "a document summarizing the data usage around August 2014." Dkt. 145-1 at 3. The summary shows that 76% of Blizzard's users get 100% of data from CDNs and 93% of users get more than 90% of the data from CDNs. *Id.* In addition, Blizzard produced approximately seven months of server logs from 2015, along with a summary of the data showing that the total contribution of peer-to-peer technology to data distribution for its modern games, such as World of Warcraft, was less than 3%. *Id.* at 3-4. Blizzard argues that its use of peer-to-peer technology during the other fifteen months after this case was filed "can be reasonably approximated from the data that has been produced." *Id.* at 4.

Pursuant to Rule 26(b)(1), parties may obtain discovery that is relevant and

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[1] Yaney stated that this information pertained to "a one-month snapshot," Dkt. 136-1 ¶ 7, but Blizzard's counsel clarified at oral hearing that this estimate covers all data Plaintiffs seek.

Similarly, Rule 26(b)(2)(B) provides that: "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."

Blizzard contends that it would be unduly burdensome to process the backup tapes, but did not provide a cost estimate to do so. Instead, Blizzard relies on its evidence that attempting to retrieve the data could take up to 500 man-hours, with no certainty that the logs contain the information sought. With respect to whether the discovery would be proportional to the needs of the case, Plaintiffs contend that the range of damages in this case is $30 million to $75 million.

In light of the considerations under Rule 26(b), particularly the importance of the discovery in resolving the issues, the Court finds that the electronically stored information from Blizzard's backup tapes is not reasonably accessible because of undue burden, and that the burden or expense of the proposed discovery outweighs its likely benefit. Blizzard has shown that the data Plaintiffs seek can be reasonably approximated from the data that has been produced. Therefore, Plaintiffs' request that the Court compel Blizzard to search the backup tapes is **DENIED**.

**B. Title-Specific Data**

The Court next considers Plaintiffs' arguments with respect to discovery of Title data, using the categories identified in Plaintiffs' motion. Dkt. 130 at 2. These arguments appear to pertain to portions of Interrogatory Nos. 4, 7, and 8 and Request for Production No. 8, although Plaintiffs have not clearly identified the relevant request in each instance.

  **1. Amount of Title Data (in GBs) that Blizzard Distributed Using Content Delivery Networks (CDNs)**

Blizzard does not object to producing this information and states that it has searched for and produced the data it possesses regarding CDN distribution. This includes a spreadsheet that lists

the amount of data distributed by CDNs from April 2009 to the present. Dkt. 135 at 6. Plaintiffs contend that the documents produced "contradict other data Blizzard produced in this case and are facially incomplete." Dkt. 130 at 3. Because Blizzard states that it has produced all responsive data it possesses, Plaintiffs' motion is **DISMISSED AS MOOT** regarding Title data distributed by CDNs as to Request for Production No. 8 and Interrogatory Nos. 4, 7, and 8.

### 2. Amount of Title Data (in GBs) that Blizzard Has Distributed Using BitTorrent or Peer-to-Peer Technology

Plaintiffs contend that the amount of Title data Blizzard distributed using BitTorrent or peer-to-peer technology is relevant to infringement and damages "because the Title data is the 'data' accessed and managed according to the Accused Method." Dkt. 130 at 4. Blizzard does not object to producing this information, asserting that it has searched for and produced all the information it possesses regarding peer-to-peer distribution. Blizzard states that it does not possess information regarding the total amount of peer-to-peer data distributed, "as this was not information that Blizzard maintained in the ordinary course of its business." Dkt. 135 at 6-7 (citing Yaney Dec., Dkt. 136-1 ¶ 6) (sealed). Blizzard does have, and has produced, "certain snapshots of peer-to-peer data distributed" during the relevant time period. *Id.* at 7. Plaintiffs reply that this data covers only a single month in 2015. Dkt. 139 at 3. Because Blizzard states that it already has produced all responsive data it possesses, Plaintiffs' motion is **DISMISSED AS MOOT** as to the amount of Title data Blizzard has distributed using BitTorrent or peer-to-peer technology.

### C. File or Data Sizes Corresponding to Each of Blizzard's Titles, Including the Amount of Data Corresponding to Each Original Game Distribution, Update, Patch, and Hotfix

Plaintiffs argue that this information "is relevant to infringement and Plaintiffs' damages because (a) it shows Blizzard's use of the Accused Method by type of data, and (b) it can be used to estimate the total amount of data that Blizzard distributed using the Accused Method." Dkt. 130

at 4. This appears to be the information sought in Plaintiffs' Interrogatory No. 8. Blizzard did not address this request in its briefing, but in response to Interrogatory No. 8, it stated that it "will produce, to the extent it exists, documents showing the amount of data distributed using BitTorrent or Peer to Peer Technology versus data distributed through other means for its products distributed in part through the use of BitTorrent or Peer to Peer Technology." Dkt. 131-1 at 19 (sealed). Because the data Blizzard stated that it would produce appears to satisfy Plaintiffs' request for the amount of data distributed "using the Accused Method," Plaintiffs' motion is **DENIED** as to this request.

### D. Blizzard's Revenues, Costs, Units Sold (Including Subscription Information) Relating to Titles, Including Subscription and Other Revenues

The financial information Plaintiffs seek appears to pertain to Interrogatory No. 7 and Request for Production No. 8. Plaintiffs argue that: "Financial and sales information relating to each Blizzard Title is relevant to Plaintiff's damages under *Georgia-Pacific* Factor No. 6[2] as collateral sales or functionally related to infringement and convoyed sales." Dkt. 130 at 4. Plaintiffs also assert that the data may be relevant to *Georgia-Pacific* Factor No. 11, the extent and value of the infringer's use of the Accused Method. *Id.* at 4 n.5. Finally, Plaintiffs argue that "if Blizzard believes the title-specific financial information provided is used improperly in a damages analysis, it can challenge that issue in a *Daubert* motion." Dkt. 139 at 5.

As stated, Blizzard contends that the allegedly infringing peer-to-peer functionality was never used when Blizzard's games were played; instead, it was used optionally only during distribution

---

[2] "The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified by Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

of the files. The delivery method of its video games, Blizzard argues, "is disconnected from the value of the title." Dkt. 135 at 10. In other words, "*how* Blizzard's video games are distributed does not affect, and is not functionally related to, the video games' operation and success." *Id.* Therefore, Blizzard argues, financial information regarding its video game titles and subscriber base is irrelevant to the damages at issue, and the burden of requiring Blizzard to produce such information is not proportional to the needs of the case. *Id.*

The Court finds that, for purposes of discovery, Plaintiffs have made a sufficient preliminary showing of relevance under *Georgia-Pacific* Factor 6. Whether or not the financial information Plaintiffs request ultimately is admissible at trial, such information may be relevant to Plaintiffs' damages theory and therefore is discoverable. Plaintiffs' motion to compel is **GRANTED** with respect to Interrogatory No. 7 and the summary Title financial information identified in Request for Production No. 8.

**E. Remaining Requests**

Plaintiffs also contend that Blizzard has failed to conduct a reasonable search for documents responsive to the discovery requests addressed below. Dkt. 130 at 11.

1. **Request for Production No. 28 – Documents relating to the monitoring, tracking, analysis, review, or reporting of the computer systems implementing Blizzard's BitTorrent-related functionalities**

Blizzard states that it has produced the information it possesses regarding the amount of data transferred through CDNs or peer-to-peer monitoring and all documents it located regarding the analysis of that data, but does not possess other data regarding the monitoring of those computer systems. Plaintiffs' motion therefore is **DISMISSED AS MOOT** as to Request for Production No. 28.

**2. Request for Production No. 8 – Documents relating to network topologies or schema for Blizzard's distribution of Title data**

Blizzard states that it

> has produced the source code that is used by users to then access the file pieces from CDNs or from peers over networks outside of Blizzard. Plaintiffs do not provide any explanation of the relevance of any internal network topologies at Blizzard, which would cover extensive data concerning the in-game operation of Blizzard's online games and that have nothing to do with the accused file distribution functionality.

Dkt. 135 at 12. Because Blizzard represents that the relevant data has been produced, Plaintiffs' motion is **DISMISSED AS MOOT** as to this portion of Request for Production No. 8.

**3. Requests for Production Nos. 6 and 25 – Documents relating to Blizzard's adoption of BitTorrent in Amazon Web Services (AWS)**

Blizzard responds that it does not use BitTorrent in AWS (Amazon Web Services). Blizzard further states that its adoption of peer-to-peer functionality occurred over eight years before this suit was filed, and it has produced any responsive documents that it found, but no documents exist responsive to Request for Production No. 6. Therefore, Plaintiffs' motion is **DISMISSED AS MOOT** as to Requests for Production Nos. 6 and 25.

**4. Request for Production No. 27 – Surveys, studies, memoranda, reports, or analysis regarding customers' use of BitTorrent**

Blizzard also represents that it "has produced responsive documents and it has not withheld any documents on this topic." Therefore, Plaintiffs' motion is **DISMISSED AS MOOT** as to Request for Production No. 27.

     **5. Requests for Production Nos. 1 and 3 – Documents regarding Blizzard's implementation of BitTorrent and BitTorrent support, training documents for systems Blizzard personnel with responsibilities for maintaining the Blizzard software and systems at issue, network diagrams, implementation documents, technical specifications, and other technical documentation**

Blizzard states that the "definitive evidence of Blizzard's implementations of BitTorrent is in the code itself, which has been produced, but Blizzard also produced all other documents it located regarding the implementations. Blizzard does not have any training documents regarding the BitTorrent functionality." Because Blizzard represents that it has produced all responsive documents located, Plaintiffs' motion is **DISMISSED AS MOOT** as to Requests for Production Nos. 1 and 3.

**F. Privilege and Identification of Custodians and Search Methods**

Finally, Plaintiffs argue that Blizzard refuses to share the identities of the custodians and network locations it has searched for responsive documents, "unjustifiably asserting privilege." Dkt. 130 at 3. They ask the Court to compel Blizzard "to identify the custodians and network locations searched for responsive documents, and whether its search was human or technology assisted." *Id.* at 11. Blizzard complains that Plaintiffs also have not identified the custodians of the documents it has produced, and contends that "its document collection efforts are protected work product." Dkt. 135 at 12 n.4.

Blizzard offers no support for its position that the custodians and locations of produced documents are privileged under the work product doctrine. Plaintiffs, however, rely on two recent cases from this Court: *Finjan, Inc. v. SonicWall, Inc.*, No. 1:20-CV-0652-RP, 2020 WL 3620428, at *2 (W.D. Tex. July 2, 2020) (ordering identification of databases and custodians searched), and *Roque v. City of Austin*, No. 1-17-CV-00932-LY, 2018 WL 5848988, at *6 (W.D. Tex. Nov. 7, 2018) (ordering defendant to search communications after agreement on appropriate custodians).

Plaintiffs' motion is **GRANTED** to the extent that Blizzard is **ORDERED** to identify the custodian and location for each document in its production, and also to identify all custodians and locations searched in response to Plaintiffs' discovery requests. As agreed by Plaintiffs at the oral hearing, Plaintiffs also are **ORDERED** to identify the custodian and location for each of its produced documents.

## IV.  Conclusion

Plaintiffs' Motion to Compel Answers to Interrogatories and Production of Documents (Dkt. 130) is **GRANTED IN PART AND DENIED IN PART**, as detailed above. The parties have until **August 5, 2021** to comply with this Order. All relief not expressly granted herein is denied.

It is **FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

**SIGNED** on July 21, 2021.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE