**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **VIA VADIS, LLC and AC TECHNOLOGIES, S.A.,** *Plaintiffs* | § § § | |
| **v.** | § | **Case No. 1:14-CV-00810-LY** |
| **BLIZZARD ENTERTAINMENT, INC.,** *Defendant* | § § § | |

**REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE LEE YEAKEL**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Blizzard's Motion for Summary Judgment of Non-infringement and Invalidity (Dkt. 175) and Plaintiffs' Motion for Summary Judgment on Validity (Dkt. 177), both filed August 10, 2021, and the associated response and reply briefs. The District Court referred the motions to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 220.

## I. Introduction

Via Vadis and AC Technologies, S.A. ("Plaintiffs") are the owner and exclusive licensee, respectively, of U.S. Patent No. RE40,521 (the "'521 Patent"), entitled "Data Access and Management System as Well as a Method for Data Access and Data Management for a Computer System." Dkt. 177-2 at 2. The '521 Patent covers a method of data access and management in computer networks that allows users to quickly access changing data by communicating directly

with any other computer in the network. *Id.* at 6. Claims of the ’521 Patent cover the operations of peer-to-peer networks (the “Asserted Claims”).

On August 22, 2014, Plaintiffs filed suit against Defendant Blizzard Entertainment, Inc. (“Blizzard”), alleging that the Downloader and Agent software Blizzard used to distribute certain of its video games (the “Accused Blizzard System”) infringed the ’521 Patent. Plaintiffs allege that the BitTorrent protocol, as implemented in Blizzard’s Downloader and Agent applications, infringe the Asserted Claims. Dkt. 116 ¶ 17. The BitTorrent protocol is a “peer to peer file distribution protocol that allows multiple networked users to simultaneously upload and download segments or pieces of the same file to and from each other.” Dkt. 116 ¶ 14. Blizzard contends that the ’521 Patent is invalid. Dkt. 119 at 7.

The parties now cross-move for summary judgment under Federal Rule of Civil Procedure 56 as to the validity of the ’521 Patent. Blizzard also asks the Court to find as a matter of law that the Accused Blizzard System does not infringe the ’521 Patent.

## II. The ’521 Patent

The United States Patent and Trademark Office (“USPTO”) reissued the ’521 Patent on September 23, 2008. Dkt. 177-2 at 2. The ’521 Patent claims priority to a foreign patent application filed by Thomas Binzinger on January 11, 1999 (the “German Application”). *Id.* The abstract describes the invention as “permit[ting] improved data access and data management in a computer system” by dividing the data and storing it “in such a way that the partial data [ ] being accessed and managed are present in the computer system in a redundant manner.” *Id.* Binzinger testified that he “wanted to move the playing field of the game onto the player’s computer” by removing “the central element” of a server. Dkt. 184 at 5 (quoting Dkt. 185-3 at 4 (Binzinger Tr.) 39:7-25 (sealed)).

Claim 30 of the '521 Patent recites, in part,

> A method for data access and data management for a computer system, comprising:
>
> storing data in at least two **data storage means**;
>
> accessing stored data by at least one computer unit via data transmission means, with prespecified parameters of the data transmission between the **data storage means** and the computer unit being determined, the data being stored in a redundant manner in at least two of the at least two **data storage means** as a function of the determined prespecified parameters of the data transmission, the access to the data being effected as a function of the determined prespecified parameters of the data transmission;
>
> **detecting prespecified parameters for data transmissions** between the **data storage means**; and
>
> **shifting** redundantly stored data independent of an access of the computer unit to the data as a function of the determined prespecified parameters of the data transmission between the **data storage means**.

Dkt. 177-2 at 20 (emphasis added). Claims 31 through 45 depend on Claim 30 and therefore contain the limitations of Claim 30. *See In re Lange*, 644 F.2d 856, 862 n.9 (C.C.P.A. 1981) (stating that "every dependent claim includes all limitations of the independent claim").

The District Court construed the claim term "data storage means" as "one or more memory cells, each cell storing: (1) one field of information; and (2) the other locations within the system where copies of the cell are located; where the information in every cell is copied the same number of times throughout the system." Dkt. 70 at 4. The District Court further construed "parameters for data transmission" as

> duration of transmission, fault rate, duration of data processing operations of individual data storage means prior to transmission, transmission quality, transmission rate, computing performance, network performance, or other performance measures.

Dkt. 60 at 35. In addition, the District Court adopted the parties' agreed construction of the claim term "shifting" to mean that "data is copied to a new location and no longer available at one of the previous locations." *Id.* at 6.

## III. Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party

opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## IV. Analysis

The Court addresses validity first, then turns to Defendant's infringement argument.

### A. Validity

Plaintiffs argue that the Court should grant summary judgment that the '521 Patent is valid because (1) there is no genuine issue of material fact that the patent's priority date is January 11, 1999, as the patents and application to which it claims priority have adequate written descriptions of claim elements; (2) there is no evidence that prior art anticipates the Asserted Claims; and (3) the Asserted Claims are definite and enabled. Dkt. 177 at 5. In the alternative, Plaintiffs seek partial summary judgment on the individual grounds raised in their motion. *Id.* at 5, 24. In its cross-motion, Blizzard argues that the Court should find the Asserted Claims invalid as a matter of law for indefiniteness. Dkt. 175 at 23-25.

Patents are presumed to be valid. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662 (Fed. Cir. 2000). The party challenging the validity of a patent bears the burden of proving the factual elements of invalidity by clear and convincing evidence. *Pfizer v. Apotex, Inc.*, 480 F.3d 1348, 1359 (Fed. Cir. 2007). Although the burden of showing validity never shifts to the patentee, a patentee "would be well advised to introduce evidence sufficient to rebut that of the challenger" once a prima facie case for invalidity is made. *Id.* at 1360 (citing *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1570 (Fed. Cir. 1986)).

**1. Priority Date**

When priority is based on subject matter disclosed in a foreign patent application whose filing date is properly claimed under 35 U.S.C. § 119(a), the foreign application has the same effect as if filed in the United States. *Frazer v. Schlegel*, 498 F.3d 1283, 1287 (Fed. Cir. 2007). "To obtain the benefit of the filing date of a parent application, the claims of the later-filed application must be supported by the written description in the parent 'in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.'" *Anascape, Ltd. v. Nintendo of Am., Inc.*, 601 F.3d 1333, 1335 (Fed. Cir. 2010) (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)). This "test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). "The specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Id.* Whether a patent complies with the written description requirement is a question of fact. *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1243 (Fed. Cir. 2002).

Plaintiffs assert that the '521 Patent's specification is "substantively identical to the specification of the German Application," as evidenced by text of the respective specifications and the testimony of their expert Dr. Jose Melendez. Dkt. 177 at 9; Dkt. 177-2; Dkt. 177-10; Dkt. 178-4 (Melendez Expert Report) ¶¶ 53-91 (sealed). Plaintiffs state that the USPTO reissued the '521 Patent "to specifically identify (and evaluate) that claim of priority [to the German Application]," citing the August 17, 2007 Examiner's Amendment. Dkt. 177 at 9; Dkt. 177-8 at 3. Plaintiffs argue that there is no genuine factual dispute that the German Application's specification contains an

adequate written description for each element of the Asserted Claims, and the ’521 Patent therefore is entitled to a January 11, 1999 priority date.

Blizzard contends that the “detecting prespecified parameters” and “shifting” limitations in Claim 30 were added to the July 10, 2001 U.S. application that would become the ’521 Patent. Dkt. 182 at 8; Dkt. 177-7. Blizzard’s expert Dr. David Ratner opined that the two limitations lack written description in the German Application, and the Asserted Claims therefore are not entitled to the January 11, 1999 priority date. Dkt. 182-2 (Ratner Expert Report) ¶¶ 2, 125-41.

Blizzard has submitted sufficient evidence to create a genuine issue of material fact as to the priority date of the ’521 Patent, specifically, whether the specification discloses the “detecting prespecified parameters” and “shifting” limitations. Accordingly, the undersigned recommends that Plaintiffs’ motion for partial summary judgment as to the priority date of the ’521 Patent be denied.

**2. Anticipation**

Anticipation under § 102 is a two-step inquiry. *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 933 (Fed. Cir. 2003). The first step is claim construction. *Id.*; *see also Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (stating that “[a] claim must be construed before determining its validity just as it is first construed before deciding infringement”) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 996 n.7 (Fed. Cir. 1995)). The second step is a comparison of the properly construed claim to the prior art. *Medichem*, 353 F.3d at 933.

To anticipate a claim, “a single prior art reference must expressly or inherently disclose each claim limitation.” *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008). A claim limitation is inherently disclosed if it is necessarily present in the single anticipating

reference. *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). If a "claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention," prior art anticipates the patent. 35 U.S.C. § 102(a)(1). Judgment as a matter of law is appropriate when no reasonable juror could dispute the clear text of a prior art reference. *Finisar*, 523 F.3d at 1338.

Blizzard relies on two prior art systems, SwarmCast and Mojo Nation, which "act in essentially the same way as the accused BitTorrent system." Dkt. 182 at 14. Blizzard contends that the systems were in use on or before July 10, 2001, which it avers is the correct priority date for the Asserted Claims in the '521 Patent. Dkt. 182 at 15. Blizzard submits evidence that the first system, Mojo Nation, was in public use at least as early as August 15, 2000. Dkt. 182-2 (Ratner Expert Report) ¶¶ 110, 172-73. The parties agree that there is evidence that SwarmCast was available as early as October 2000. Dkt. 177 at 15; Dkt. 182 at 15. Plaintiffs argue that these systems should be excluded as references as a matter of law because neither predates the January 11, 1999 priority date established by the German Application, and also that there is no evidence either system meets the "storing" or "shifting limitations." Dkt. 190 at 9; *see also* Dkt. 177 at 14.

As stated above, genuine issues of material fact preclude summary judgment on the priority date of the '521 Patent. Because there are genuine fact issues as to whether the priority date is in 1999 or 2001, and there is evidence that both SwarmCast and Mojo Nation were in public use in the year 2000, summary judgment is precluded as to whether Mojo Nation and SwarmCast are prior art that anticipates the Asserted Claims of the '521 Patent. *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 240 F. Supp. 3d 605, 620 (E.D. Tex. 2017) (finding that open factual questions regarding whether reference could be considered prior art foreclosed summary judgment on issue of anticipation).

### 3. Indefiniteness

"The Patent Act requires that a patent specification 'conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as [the] invention.'" *Nautilus v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) (quoting 35 U.S.C. § 112). "A patent is indefinite 'if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'"" *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1375 (Fed. Cir. 2017) (quoting *Nautilus*, 572 U.S. at 901). However, "[a] patent need not explicitly include information that is already well known in the art." *Id.* at 1376.

A determination of claim indefiniteness is a legal conclusion reached by the court performing its duty as the "construer of patent claims." *Auto-Dril, Inc. v. Nat'l Oilwall Varco, LP*, 304 F. Supp. 3d 587, 606 (S.D. Tex. 2018) (quoting *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008). "To the extent there are any factual findings upon which a trial court's indefiniteness conclusion depends, they must be proven by the challenger by clear and convincing evidence." *Id.* Courts may find a term invalid for indefiniteness during claim construction or elect to wait until the summary judgment stage. *ConocoPhillips Co. v. In-Depth Compression Seismic, Inc.*, No. H-18-0803, 2019 WL 1877374, at *18 (S.D. Tex. Apr. 16, 2019).

Blizzard argues that the "shifting" limitation is indefinite because a person of ordinary skill in the art would not be able to understand its scope under Plaintiffs' "overbroad re-interpretation" of the term. Dkt 182 at 21; *see also* Dkt. 175 at 23-25. Blizzard contends that, under Plaintiffs' infringement theory, "shifting" can occur even when data copying and data unavailability "are causally and temporally unrelated." Dkt. 175 at 23. A person of ordinary skill in the art "could not know whether the data has been 'shifted' because years could pass before the data becomes

unavailable at a prior location, leaving in limbo the question of whether the 'shifting' limitation might later be met." *Id.* Blizzard submits expert testimony from Barbara Frederiksen-Cross and Robert Zeidman, who each opined that the "shifting" limitation could be met even if years passed between the data copying and data unavailability. Dkt. 175-6 (Frederiksen-Cross Tr.) 113:9-17; Dkt. 175-7 (Zeidman Tr.) 222:2-14.

Plaintiffs assert that Blizzard has waived its argument that "shifting" is indefinite because the parties agreed to the construction of the claim term. Dkt. 184 at 23. Plaintiffs further argue that the "shifting" limitation is definite without a temporal requirement because "copying and unavailability are connected by the use of prespecified parameters and the system dynamics." Dkt. 190 at 13.

Blizzard has not shown by clear and convincing evidence that a person of ordinary skill in the art would not understand the scope of the "shifting" limitation. *See Nautilus*, 572 U.S. at 910 (stating that "absolute precision is unattainable" and "the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter"). Therefore, the undersigned recommends that the District Court deny Blizzard's motion for summary judgment that the Asserted Claims are invalid for indefiniteness and grant Plaintiffs' motion for partial summary judgment that the "shifting" limitation is definite.

**4. Enablement**

A specification must enable one of ordinary skill in the art to make and use the claimed invention without undue experimentation. *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1368-69 (Fed. Cir. 2014) (citing 35 U.S.C. § 112). A claim is invalid if undue experimentation is needed to practice the claims. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). Courts consider the following factors to determine whether experimentation is undue: (1) the

quantity of experimentation necessary; (2) the amount of direction or guidance presented; (3) the presence or absence of working examples; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability or unpredictability of the art, and (8) the breadth of the claims. *Id.* Enablement is a question of law that is based on underlying factual determinations. *Amgen Inc. v. Sanofi Aventisub LLC*, 987 F.3d 1080, 1084 (Fed. Cir. 2021).

Plaintiffs assert that Blizzard has submitted no evidence that the claim element containing "prespecified parameters" is not enabled. Dkt. 177 at 22. Plaintiffs cite the July 8, 2020 decision in this case by the Court of Appeals for the Federal Circuit, in which the court found the claim term to be definite "because the scope and meaning of 'prespecified parameters' is reasonably ascertainable by a skilled artisan." *Via Vadis v. Blizzard Entm't*, 815 F. App'x 539, 546 (Fed. Cir 2020). Blizzard disputes that the Federal Circuit decided the issue of enablement because (1) the discussion of "prespecified parameters" related to "between data storage means and the computer unit," and (2) the Federal Circuit's opinion addresses indefiniteness, which is a separate statutory requirement from lack of enablement. Dkt. 182 at 22 n.9 (citing *Via Vadis*, 815 F. App'x at 542).

Blizzard's expert Dr. Ratner opined that a person of ordinary skill in the art would have to engage in significant experimentation to implement a method that included the prespecified parameters limitation because the '521 Patent does not explain what the parameters between data storage means would include or how they would be detected. *See* Dkt. 182 at 24; Dkt. 178-3 (Ratner Expert Report) ¶ 146 (sealed). Plaintiffs rely on the testimony of their expert Dr. Melendez to refute Dr. Ratner's conclusion that undue experimentation would be required. Dkt. 190 at 14 (citing Dkt. 178-4 (Melendez Expert Report) ¶¶ 91, 125, 127, 132-33, 172-73 (sealed)).

Based on this summary judgment evidence, the undersigned finds that there is a genuine issue of material fact as to whether undue experimentation is needed to practice the claims.

Consequently, there is a genuine issue of material fact as to enablement that precludes summary judgment. *See CFMT, Inc. v. Yieldup Int'l Corp.,* 349 F.3d 1333, 1340 (Fed. Cir. 2003) (remanding for determination whether genuine issue of material fact required parties to proceed to trial on enablement issue).

**B. Non-infringement**

Literal infringement of a properly construed claim is a question of fact. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006). To prevail on a motion for summary judgment of noninfringement, a defendant must show that no genuine issue exists as to whether the accused products are "encompassed by the claims." *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1358 (Fed. Cir. 2009).

Blizzard argues that the Court should grant summary judgment that it did not infringe the Asserted Claims because (1) the Accused Method lacks the claimed "data storage means," and (2) the Accused Blizzard System does not satisfy the "shifting" limitation. Dkt. 175 at 7. Plaintiffs contend that disputed fact issues preclude summary judgment on both grounds. Dkt. 184 at 7-22.

**1. Data Storage Means**

"Data storage means" is a means-plus-function limitation. Dkt. 60 at 6-7. A means-plus-function limitation "literally covers an accused device if the relevant structure in the accused device performs the identical function recited in the claim and that structure is identical or equivalent to the corresponding structure in the specification." *Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009). The District Court construed "data storage means" as "one or more memory cells, each cell storing: (1) one field of information; and (2) the other locations within the system where copies of the cell are located; where the information in every cell is copied the same number of times throughout the system." Dkt. 70 at 4.

Blizzard argues that Plaintiffs have "not identified anything in BitTorrent" that meets the definition of "data storage means." Dkt. 175 at 12. Blizzard asserts that the "other locations" requirement is not satisfied because a person of ordinary skill in the art would understand it to mean "*all* other locations within the system where copies of the cell are located." *Id.* Blizzard contends that Plaintiffs cannot show that all locations store data copies because the number of users on the BitTorrent peer-to-peer system is constantly in flux and an unlimited number of peers can download the pieces of a file. Blizzard further argues that the "same number" requirement is not satisfied because BitTorrent does not require each file or file piece to be copied the same number of times throughout the system. *Id.* at 15.

**a. Other Locations**

The District Court specifically rejected Blizzard's request to modify its claim construction to add "all of" to "other locations within the system where copies of the cell are located." Dkt. 70 at 3. Accordingly, the "data storage means" infringement analysis does not include a requirement of "all locations." Because Blizzard's motion for summary judgment is based on a requirement that is not present in the "other locations" limitation, the undersigned recommends that its motion for summary judgment of non-infringement be denied.

**b. Same Number**

Plaintiffs assert that Blizzard similarly attempts to recast the "same number" limitation as fixed and unable to change over time, despite the Court's claim construction containing no such requirement. Dkt. 184 at 11. Even adopting Blizzard's interpretation, Plaintiffs cite testimony of Blizzard's corporate representative, John Yaney, and Frederiksen-Cross' report and testimony as

evidence that the "same number" limitation was met in the BitTorrent "End Game" and "Slice of Time"[1] modes:

> Blizzard used BitTorrent to distribute its games to its players. And Blizzard designed and operated its peers and supporting infrastructure to that ultimate goal—distributing all the pieces of its game files to each peer. When Blizzard's BitTorrent peers obtained all the pieces in the "End Game," they became "seeds."

*Id.* at 13 (footnotes omitted) (citing Dkt. 185-5 (Yaney Tr.) 124:11-125:16 (sealed)). "A collection of seeds in End Game had copies of each piece stored the 'same number of times' as every other piece, namely the number of times equal to the number of seeds in 'the system.'" *Id.* (citing Dkt. 185-2 (Frederiksen-Cross Expert Report) ¶¶ 126, 136 (sealed); Dkt. 185-4 (Frederiksen-Cross Tr.) 72:25-74:18 (sealed)); *see also* Dkt. 185-4 at 78:16-25. Accordingly, Plaintiffs have presented evidence creating a genuine dispute of material fact regarding whether Blizzard's Accused System meets the "same number" limitation, which precludes summary judgment on noninfringement due to the lack of "data storage means." Because the Court has determined there is a factual dispute relating to "End Game" mode, the Court need not address Blizzard's remaining noninfringement arguments regarding "data storage means."

**2. Shifting**

The District Court construed "shifting" as "copied to a new location and no longer available at one of the previous locations." Dkt. 60 at 6, 39. Blizzard argues that Plaintiffs have no evidence that its Downloader and Agent programs meet the "shifting" limitation because (1) data is never globally unavailable; (2) "choking" does not meet the requirements; and (3) banning, dropping, and exiting a swarm do not meet the limitation. Dkt. 175 at 17-22.

---

[1] Plaintiffs state that the "Slice of Time" mode "occurs when Blizzard peers are working toward 'End Game' but have not reached this goal." Dkt. 184 at 15 (citing Dkt. 185-5 (Yaney Tr.) 241:17-244:16 (sealed)).

**a. Unavailability**

Blizzard contends that Plaintiffs have no evidence showing that the Accused Blizzard System meets the requirement that data "is no longer available at one of the previous locations" because the file pieces it distributes "*remain available* at the peer from which they were copied, as well as at every other peer that contained those pieces." Dkt. 175 at 18. Blizzard's expert witness challenges the findings of Plaintiffs' expert witness, stating that she disregards the agreed construction and fails to explain "whether the data must be no longer available to all peers attempting to access" it or "just *one* peer" in rendering her opinion that the "shifting" limitation is met. *Id.* (citing Dkt. 176-1 (Ratner Expert Report) ¶ 157 (sealed)).

Plaintiffs respond that, in arguing that they must establish global or permanent unavailability, Blizzard attempts to read requirements into the limitation that do not exist. Dkt. 184 at 19. Plaintiffs argue that their expert's opinion is evidence that the BitTorrent protocol results in unavailability of data, which is all that is required to satisfy the "shifting" limitation. *Id.* (citing, *inter alia*, Dkt. 185-2 (Frederiksen-Cross Expert Report) ¶¶ 197-212 (sealed)).

The undersigned finds that the parties have presented a "battle of the experts," creating a fact issue that precludes summary judgment on noninfringement of the "shifting" limitation. *See Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.*, 99 F. App'x 911, 921 (Fed. Cir. 2004) (stating that "battle of the experts" renders summary judgment improper).

**b. Choking**

Choking is a designation that two peers will not exchange file pieces. "When peer A chokes peer B, it makes the information on peer A unavailable to peer B." Dkt. 175-7 (Zeidman Tr.) 204:13-14. However, data on peer C is still available to peer B, and vice-versa. *Id.* at 204:15-19.

A peer later may send an "unchoke" message and continue copying data to the previously choked peer. Dkt. 175 at 20 (citing Dkt. 176-1 (Ratner Expert Report) ¶ 168 (sealed)).

Blizzard argues that BitTorrent's "choking" functionality does not satisfy the "shifting" limitation because data is unavailable only temporarily. *Id.* Blizzard again uses its expert to attack Plaintiffs' expert, who opined that permanent unavailability is not required to satisfy the shifting limitation. *Id.* (citing Dkt. 176-1 (Ratner Expert Report) ¶¶ 162-64 (sealed)). With respect to choking, the record again comprises a "battle of the experts" creating a fact issue that precludes summary judgment.

Because the Court has determined there is a factual dispute relating to whether the Accused Blizzard Systems meet the "shifting" limitation, the Court need not address Blizzard's remaining noninfringement arguments.

## V. Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** Blizzard's Motion for Summary Judgment of Non-infringement and Invalidity (Dkt. 175).

The undersigned further **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Plaintiffs' Motion for Summary Judgment on Validity (Dkt. 177). The undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiffs' motion for partial summary judgment and find as a matter of law that the "shifting" limitation is definite and otherwise **DENY** Plaintiffs' Motion for Summary Judgment on Validity.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

**VI. Warnings**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on December 26, 2021.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE